UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


SHARI BOW,                         )
                                       )
        Plaintiff,         )
                                       )       CIVIL ACTION NO.
VS.                          )
                                       )       3:18-CV-0510-G
AD ASTRA RECOVERY SERVICES, )
INC.,                        )
                                       )
        Defendant.     )


## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Ad Astra Recovery Services, Inc. ("Ad Astra") to dismiss or stay the instant proceedings and to compel arbitration (docket entry 12). For the reasons set forth below, the defendant's motion is granted.

## I. BACKGROUND

On January 18, 2016, the plaintiff, Shari Bow ("Bow"), entered into a loan agreement with two companies, Integrity Texas Funding, LLC and SCIL Texas, LLC ("Speedy Cash"). *See* Defendant's Memorandum in Support of Its Motion to Dismiss or Stay Proceedings and Compel Arbitration ("Ad Astra's Brief") ¶ 6 (docket

entry 13). After executing the necessary loan documents, Speedy Cash provided Bow with $850. *Id.* ¶ 7. But shortly after finalizing the loan, on February 2, 2017, Speedy Cash sent Bow's account to Ad Astra for collection. *Id.*

According to Bow's complaint, from approximately March 2017 to May 2017, Ad Astra repeatedly called Bow on her cellular telephone using an automatic dialing system. Plaintiff's Original Complaint for Damages and Injunctive Relief ("Complaint") ¶ 19 (docket entry 1). Ad Astra, however, contends that Bow failed to pay the debt. Ad Astra's Brief ¶ 7. In response, Bow avers that before receiving the calls, she had already settled the debt. Complaint ¶ 21. And according to Bow, though she asked Ad Astra numerous times in April 2017 to stop calling, the calls persisted. *Id.* ¶¶ 41-42.

In light of this alleged conduct, Bow now asserts that Ad Astra's collection efforts violated the Telephone Consumer Protection Act, the Texas Fair Debt Collection Practices Act, and the Fair Debt Collection Practices Act. *Id.* ¶ 1. Ad Astra seeks to compel arbitration of Bow's claims pursuant to the arbitration agreement in the parties' loan documents. Ad Astra's Brief ¶ 1.

On March 5, 2018, Bow filed suit in this court. Complaint. Shortly thereafter, on April 13, 2018, Ad Astra filed a motion to compel arbitration, Defendant's Motion to Dismiss or Stay Proceedings and Compel Arbitration, and an appendix in support of the motion. Appendix to Defendant's Motion to Dismiss or

Stay Proceedings and Compel Arbitration ("Ad Astra's Appendix") (docket entry 14). On May 4, 2018, Bow filed a response. Bow's Response to Defendant's Motion to Dismiss ("Bow's Response") (docket entry 15). And on May 18, 2018, Ad Astra filed a reply to Bow's response. Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss ("Ad Astra's Reply") (docket entry 16). The defendant's motion is now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

In considering whether a dispute is subject to binding arbitration, the court must determine whether there is a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration agreement. *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). In general, this determination is made "by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act.'" *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983)).

Federal law strongly favors arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); see also *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (the Federal Arbitration Act ("FAA") "declared a national policy

favoring arbitration . . . .") (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 10 (1984)); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Accordingly, the FAA, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

While there is a strong federal policy favoring arbitration, the court does not yield to this policy when making the initial threshold determination about the existence of an agreement to arbitrate. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (internal citations omitted); *Will-Drill Resources, Inc. v. Samson Resources Company*, 352 F.3d 211, 214 (5th Cir. 2003). However, once an arbitration clause's validity has been established, the court must observe the strong federal policy favoring arbitration and resolve all ambiguities in favor of arbitration. *Primerica Life Insurance Company v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-step inquiry. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam). First, the court must determine "whether the parties agreed to arbitrate their dispute." *Id.* Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) if the court finds that the parties agreed to arbitrate, whether the dispute in question is within the scope of the arbitration agreement. *Id.* "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012) (per curiam).

Second, the court must ensure that no legal constraints external to the agreement have foreclosed arbitration of the disputed claims. *OPE International*, 258 F.3d at 446. All doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration. See *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 583 (1960). If the court finds that this two-step inquiry is satisfied, arbitration must be ordered. *Mitsubishi Motors*, 473 U.S. at 628.

## B. Application

### 1. *The presence of a valid arbitration agreement*

This case turns on whether a valid arbitration agreement exists between Bow and Ad Astra. Put differently, the court is asked to determine whether Bow agreed to

arbitration of her claims against Ad Astra, a nonsignatory. "Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004).

Bow asserts that Ad Astra cannot meet the requirements of equitable estoppel to enforce the arbitration agreement. Bow's Response at 13. In a case from the Fifth Circuit, *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379 (5th Cir. 2008), the court declined to resort to theories such as estoppel to determine whether a nonsignatory defendant may invoke arbitration. *Id*. at 382. It noted that because "[n]one of the agreements that we have considered in our opinions involving nonsignatories expressly addressed whether a nonsignatory may compel a signatory to arbitrate a claim," the court "frequently relied on theories such as equitable estoppel to determine whether the nonsignatory may invoke arbitration." *Id*. However, the court in *Sherer* found that the district court erred when it held that it *must* apply equitable estoppel to determine a nonsignatory's rights and duties under an arbitration clause. *Id.*

In its evaluation, the Fifth Circuit found that the nonsignatory defendant may compel arbitration because the terms of the relevant loan agreement clearly identified when the plaintiff may be compelled to arbitrate with a nonsignatory. *Id*. Such is the case here. Under the broad terms of the arbitration agreement, Bow agreed to

arbitrate "all claims asserted by [her] individually against [Speedy Cash], the Lender, and/or any of . . . its employees, agents, . . . or affiliated entities (hereinafter collectively referred to as 'related third parties')."  Ad Astra's Appendix at 7.  Ad Astra is an affiliate entity because it contracts with Speedy Cash for collection of delinquent accounts.  *Id.* at 27.  Additionally, the Credit Access Services Agreement Form explicitly mentions Ad Astra as a "related party."  *Id.*  Specifically, the provision entitled "Agreements for Resolving Disputes; Certain Definitions," contains the following language:

> The Pre-Dispute Resolution Procedure, Arbitration Provision and Jury Trial Waiver set forth below govern 'Claims' you assert against us or any 'related party' of ours and 'Claims' we or any related party assert against you. For purposes of this Agreement, our 'related parties' include all parent companies, subsidiaries, and affiliates of ours (including Ad Astra Recovery Services, Inc.), and our and their employees . . . .

*Id.* at 43.  Because Speedy Cash specifically mentioned Ad Astra as a "related part[y]," the court concludes that there exists a valid and enforceable arbitration agreement between the parties in this case.

### 2.  *The scope of the arbitration clause*

Given the presence of a valid arbitration clause, the court next addresses whether the text of the arbitration agreement covers Bow's claims.  When addressing questions of arbitrability, all doubts concerning the scope of the arbitration clause in

a contract should resolved in favor of arbitration.  See *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 583 (1960).  Here, Bow's claims fall within the agreement's scope, as Bow's federal law claims are explicitly covered by the language of the Loan Application.  Ad Astra's Appendix at 7.  Indeed, the arbitration agreement extends to "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Application."  *Id.*

### 3. *Evidentiary objections*

Bow also contends that the court should not consider the loan documents Ad Astra submitted in support of its motion because those documents do not meet the requirements for authentication under Federal Rule of Evidence 901(a) and, further, they do not qualify as business records under the business record exception to the hearsay rule.  Bow's Response at 9-11.

As a preliminary matter, it is well-settled that "[s]igned instruments such as . . . contracts . . . are writings that have independent legal significance, and are nonhearsay."  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir.) (footnotes, citations, and internal quotation marks omitted), *cert. denied*, 513 U.S. 820 (1994); see also *Everest Indemnity Insurance Company v. Allied International Emergency LLC,* No. 4:08-CV-678-Y, 2009 WL 2030421, at *2 (N.D. Tex. July 14, 2009) (Means, J.) ("A contract is not hearsay and, consequently, need only be authenticated in order to be admissible.").  Therefore, because some of the loan

documents containing the arbitration provision appear to have independent legal significance, *e.g.*, the promissory note, and contain the plaintiff's electronic signature -- *see, e.g.*, Ad Astra's Appendix at 14 -- those documents are themselves not hearsay and the only remaining question is whether they have been properly authenticated under Rule 901(a).

The standard for determining the admissibility of evidence provided by a party seeking to compel arbitration "is akin to the one applied when deciding a summary judgment motion, including the requirement that evidence in a declaration [must comply with the Federal Rules of Evidence] and[, accordingly, must be] based on personal knowledge." *Galitski v. Samsung Telecommunications America, LLC*, No. 3:12-CV-4782-D, 2013 WL 6330645, at *1 n.1 (N.D. Tex. Dec. 5, 2013) (Fitzwater, Chief J.). Federal Rule of Evidence 901(a) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. In *United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993), the Fifth Circuit explained that Rule 901(a) "does not require conclusive proof of authenticity," but instead "merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *Id.* at 1128.

In this case, Ad Astra has submitted two sworn declarations as proof of the loan documents' authenticity. Ad Astra's Appendix at 3-5, 26-28. Both declarants have stated, under oath, that they reviewed Speedy Cash's records pertaining to Bow. *Id.* at 4, 27. And further, in light of the clarifications provided by Ad Astra in its reply with respect to the nature of the declarants' line of work, the court is satisfied as to the basis for their review of the documents. *See* Ad Astra's Reply at 2-4. As Ad Astra points out, it appears that Bow even admits -- though perhaps unintentionally -- to the loan documents' authenticity in her response. *Id.* at 2, 3. Specifically, on page five of her response, Bow states the following: "[t]he payday loan document containing the arbitration provision is one of among four documents. Ad Astra is not a party to any of the documents. Bow is a party to all the documents." Bow's Response at 5. Accordingly, the court concludes that Ad Astra has met its burden and has established that the loan documents are what it purports them to be. See *Arce*, 997 F.2d at 1128.

## III. <u>CONCLUSION</u>

For the reasons stated above, the defendant's motion is **GRANTED**. The FAA directs federal district courts to stay proceedings until the arbitration process is completed. *See* 9 U.S.C. § 3. Accordingly, the parties shall proceed to arbitration for resolution of their dispute, and this action is **STAYED** pending the outcome of that arbitration proceeding.

**SO ORDERED**.

July 18, 2018.


A. JOE FISH
**A. JOE FISH**
**Senior United States District Judge**